KELLOGG-FONTAINE LUMBER COMPANY, INC. *v.* CRONIC.

4-9522  .                                    240 S. W. 2d 872

Opinion delivered June 18, 1951.

*Bedwell & Bedwell,* for appellant.

*David L. Ford* and *Roy Gean,* for appellee.

PAUL WARD, J.  N. D. Wedge, one of the appellees, sold Lot 5, Wedge Place Addition to the City of Fort Smith, to Othal E. and Ruby R. Cronic, also appellees, and, by written contract, engaged M. A. Gibbs to build a house on said lot for the Cronics.  The construction material was purchased from appellant, Kellogg-Fontaine Lumber Company, which knew of the contract and knew where the lumber was being used.  Some weeks after the construction started Wedge issued a check for $1,400 pay

able to Gibbs and the Lumber Company and noted thereon "Material, Lot 5, Wedge Pl., Jenny Lind Rd." The check was delivered to Gibbs who took it to the Lumber Company. The Lumber Company applied $1,000 on the Wedge-Gibbs account and gave back to Gibbs $400, leaving a balance of more than $400 due on the account. Later, after Wedge had settled with Gibbs, it developed there was a balance of $400 due appellant and it brought suit for said amount against Wedge, Gibbs and the Cronics, first perfecting its lien according to statutes.

Upon trial in the lower court before a jury appellant recovered the amount sued for. Thereupon defendants, appellees, filed a motion for a new trial on the grounds that: (1) The court erred in refusing defendants' request for an instructed verdict; (2) the verdict was contrary to the law; (3) the verdict was contrary to the evidence; (4) the verdict was against the law and the evidence, and (5) the court erred in refusing to give certain instructions. The court granted appellees a new trial and the order recited as the only ground "that the verdict rendered . . . was contrary to law." Appellant duly excepted and prosecutes this appeal, first agreeing, in accordance with Ark. Stats., § 27-2101, that if there is an affirmance this court shall render final judgment against it.

In our opinion the court committed no reversible error in granting appellees' motion for a new trial.

*If* the notation mentioned above was on the check when the Lumber Company received and cashed it this, in addition to its knowledge of the construction contract and of where the material was being used, was sufficient notice to it of Wedge's desire to have the full amount of $1,400 applied on material, and appellant had no right under the law to give $400 of the amount of the check to Gibbs, the contractor. That the application of payments by a debtor must be credited in accordance with his wishes is a principle of law well settled by many cases of this court. Among such cases are: *Briggs* v. *Steel*, 91 Ark. 458 (at p. 465), 121 S. W. 754; *Harrison* v. *First National Bank of Huntsville*, 117 Ark. 260 (at p. 265),

174 S. W. 553; *Snow* v. *Wood,* 163 Ark. 280 (at p. 283), 259 S. W. 733.

Appellant admits it knew the material was being used on Lot 5, Wedge Place, and admits it saw the contract between Wedge and Gibbs which set out the location in the first line in bold type. When it received the check signed by Wedge with the notation, "Material, Lot 5, Wedge Pl., Jenny Lind Rd.," it could have meant but one thing to it, *i. e.,* that Wedge desired the payment to be applied to the material account. Even if it could be said that appellant did not fully understand the meaning of the notation, it was at least sufficient to put a reasonably prudent person on notice to make inquiry and it will be held to have notice of all facts that such inquiry would have revealed. In the case of *Trinity Royalty Company* v. *Riggins,* 199 Ark. 939, 136 S. W. 2d 473, the court said: "This court is committed to the doctrine that 'notice of facts which would put a man of ordinary intelligence on inquiry is equivalent to knowledge of all the facts that a reasonably diligent inquiry would disclose.' " The same principle of law has been announced many times in other cases by this court.

It is insisted by appellant, however, that the evidence presented a disputed question of fact as to whether the notation mentioned above was actually on the check when it was received; that this presented a question for the jury; and that, therefore, the lower court erred when it granted appellees' motion for new trial. The evidence on this point was not substantially disputed and does not, in our opinion, support appellant's contention.

The check was introduced in evidence and it showed the notation in question on its face. Wedge testified that he instructed Ivan Cope to write the check and had him to put the notation on it in order to show where the material was being used and so that "it would go down there and pay on the lumber bill." He stated that he made the check to appellant and Gibbs; that just before he did so he also gave Gibbs a check for all the labor due up to that time; and that he had Gibbs' name put on the check to the Lumber Company because he had a contract with Gibbs to build a house for "so many dollars."

"Q. Then the reason you put on that notation, you had that put on there or you put it on there?"

"A. I had it put on there; I don't write very well; all I did was sign the check.

"Q. It was on there when you signed it?

"A. Yes, sir, I sat there and told him what to write on the check.

"Q. You saw it before you sent it out?

"A. Yes, sir.

"Q. Your reason for doing that was to note where that money was being spent and what it was going for; that it was going for material that went out on that Jenny Lind location?

"A. Yes, sir.

"Q. The reason you put that notation on there was because you wanted it applied on the material bill?

"A. Yes, sir."

Ivan Cope stated that he was working for Wedge at the time and that he wrote the check.

"Q. Did you write that check?

"A. I did.

"Q. What did he tell you?

"A. He said to make it to Kellogg-Fontaine Lumber Company and M. A. Gibbs, and to make the notation at the bottom of the check for material, Lot 5, Wedge Addition, City of Fort Smith.

"Q. Was this notation here on this check at the time it was delivered to Mr. Gibbs?

"A. It was."

The only testimony on the part of appellant regarding the notation on the check was that of D. L. Fontaine, an officer of appellant corporation.

"Q. I hand you defendant's Exhibit A and ask you if that is the check you received from Mr. Wedge for $1,400?

"A.    Yes, sir.

"Q.    At the time you received that check did you notice that notation there?

"A.    No, sir.

"Q.    You won't swear under oath that it was not there, will you?

"A.    No, sir.  I won't swear that it was or wasn't.

"Q.    He claimed there was a notation, 'Material, Lot 5, Wedge Place Addition,' on the check and you state that you did not see it if it was there; is that right?

"A.    That is right, if there was any notation on there I didn't see it."

From the above it appears that there was clear and positive testimony to the effect that the notation was on the check and since this is not contradicted by substantial testimony it presented a question of law for the court to decide.  In our opinion reasonable minds could only conclude that the notation was on the check when it was delivered to appellant.  In *Brigham* v. *Dardanelle & R. Ry. Co.*, 104 Ark. 267, 149 S. W. 90, Judge KIRBY announced this rule: "The question of sufficiency of the evidence is one of law, and it is only when the facts are undisputed, and when different minds cannot draw different conclusions therefrom, that it becomes the court's duty to direct the verdict."  The above rule was quoted in *United Van Lines, Inc.* v. *Haley*, 214 Ark. 938, 218 S. W. 2d 715.

At the close of all the testimony in the trial below appellees asked for a directed verdict, which the court overruled and allowed the case to go to the jury.  After a verdict for appellant appellees moved for a new trial setting out therein, among other things, that the court erred in refusing to grant their original motion for a directed verdict.  The court granted a new trial on the ground that the verdict of the jury was against the law. In our opinion the court specified a proper ground and it was fully justified in granting a new trial thereon.

We are of the opinion, therefore, that no reversible error was committed by the trial judge in granting a new trial, so judgment absolute will be entered here against appellant in accordance with Ark. Stats., § 27-2150.

GEORGE ROSE SMITH, J., dissenting. It seems to me that the testimony presented a question of fact for the jury. Fontaine's statement that he did not see the notation on the check justified the jury in inferring that the notation was not there. The appellee's failure to produce the bank's photograph of the check may have been considered by the jury as an indication that the notation was made after the canceled check was returned to Wedge. And even if the notation were conclusively shown to have been made before the check was delivered to Gibbs, I think there would still be a question for the jury. The check was payable jointly, indicating that Gibbs was to have part of the proceeds. And the notation merely mentioned "material," which could have meant material supplied by Gibbs as well as lumber supplied by the appellant. In short, had the motion for new trial been denied I do not think we would have reversed the judgment on the ground that it was not supported by any substantial evidence.

If I am correct in this view, then the circuit court was in error in finding the verdict to be contrary to law. If he had set aside the verdict as being against the preponderance of the evidence I should agree with the majority, but I do not think the verdict to be contrary to law.